UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
STACEY MORIATES,

                    Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF ENVIRONMENTAL
PROTECTION, EMILY LLOYD, CARTER
STRICKLAND, JR., STEVEN LAWITTS, ZOE
ANN CAMPELL, CARLA LOWENHEIM, PERSIS
LUKE, and MICHAEL GILSENAN,

                    Defendants.
-----------------------------------------------------------------x

MEMORANDUM & ORDER

13-cv-4845 (ENV) (LB)

VITALIANO, D.J.,

        Plaintiff Stacey Moriates brings this suit against the City of New York (the "City"), its Department of Environmental Protection ("DEP"), and various of its employees and agents, pursuant to 42 U.S.C. § 1983, alleging violations of her First Amendment rights. Moriates initially proceeded *pro se* on a Title VII and New York City Human Rights Law ("HRL") theory. That initial complaint was dismissed with leave to replead. She then secured counsel, who filed an amended complaint on February 18, 2014, adding new defendants and changing her theory of liability. ECF Dkt. No. 26. Defendants now move to dismiss on the grounds that: (1) Moriates failed to comply with the order on repleading; (2) her new allegations, which added new defendants, are time-barred and the relation-back doctrine is inapplicable; and (3) she fails to state a claim upon which relief could be granted. For the reasons that follow, the motion is granted.

## Background

        Moriates has been a DEP employee for over 35 years. Amended Complaint ("Compl.") ¶

1

6. She strings together a slew of allegedly adverse employment actions dating back to February 20, 1986, when she was subpoenaed to appear at a New York State Division of Human Rights hearing on behalf of another DEP employee. *Id.* at 7. She was, she says, removed from her agency position two weeks later, and "felt and believed that she was blacklisted" from other opportunities. *Id.* at 9. She goes on to catalogue other ancient slings and arrows: in March 1991, her office was vandalized; in December of 2007, she was falsely implicated in an incident involving lewd photos; in March of 2008, an e-mail circulated wrongly accusing her of criminal conduct; and in December 2008, she applied for a position as Executive Director of the Division of Emergency Response and Technical Assessment, but was never interviewed. *Id.* at 10-13.

More recently, Moriates claims that, on May 18, 2010, she testified at a hearing held by the Office of Administrative Trials and Hearings ("OATH") on behalf of DEP employee Viktor Berlyavsky, who was charged with violating hazardous materials regulations. *Id.* at 14. On May 26, 2010, plaintiff says she testified at a second OATH hearing, this time on behalf of coworker Olga Zubkova, regarding alleged bullying by Zubkova's supervisor. *Id.* at 15. Retaliatory behavior, she claims, followed. Two days after Zubkova's hearing, Moriates applied for the position of Assistant Commissioner of Environmental Health & Safety, but was not interviewed. *Id.* at 16. In October of 2010, Moriates was interviewed for a different position, Assistant Commissioner for Green Infrastructure, but was informed all applicants needed a particular license, and was told to "go get a PE license!" *Id.* at 17. She claims that, in March of the following year, she discovered two-thirds of her personnel file was missing. *Id.* at 18. Then, in August of 2011, she was "uncharacteristically ordered to report to a high crime area during a hurricane, and denied use of a DEP vehicle by numerous supervisors, including Lawitts." *Id.* at 19. In November 2011, a supervisor, Luke, allegedly "made false statements about the

circumstances regarding the failure to authorize said vehicle to Moriates." *Id.* at 20.

Moriates testified once more on behalf of Berlyavsky, this time at a disciplinary hearing, on August 21, 2013, regarding an alleged violation of agency policy that DEP employees could not remain at DEP facilities after work hours. *Id.* at 22. On August 28, 2013, supervisor Gilsenan instructed Moriates that, pursuant to the same policy, she could no longer remain in the office after work hours, "though said policy was not enforced as against any other DEP employee." *Id.*

## Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." A litigant need not supply "detailed factual allegations" in support of his claims, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), but she must provide more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "A pleading that offers 'labels and conclusions' . . . will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

To survive a Rule 12(b) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotations omitted). On a Rule 12(b)(6) motion, the trial court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving

3

party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008) (quotation omitted). In addition, the district court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

## Discussion

I.   The Scope of Repleading

As a doorstep matter, defendants argue the amended complaint should be dismissed in its entirety because, in changing her entire theory of liability and dropping all prior Title VII and HRL claims, she exceeded the scope of leave given to replead. The Memorandum and Order granting leave stated the "complaint is dismissed with prejudice as to [plaintiff's] Title VII claims against the individual defendants and as to all claims against the Department of Correction [], but otherwise without prejudice, and with leave to amend should she be able to do so in good faith." Mem. & Order, p. 10 (dated Dec. 18, 2014), ECF Dkt. No. 23. Yet, in their microscopic parsing of the leave grant, defendants fail to come to grips with the reality that Moriates proceeded *pro se* at the time. For *pro se* litigants, broad leave to replead is generally appropriate, since they lack the legal acumen and experience to differentiate successful claims from unsuccessful ones. *See Cruz v. Gomez*, 202 F.3d 593, 597-98 (2d Cir. 2000) (holding that *pro se* plaintiff should be afforded opportunity to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.") (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)).

Moriates has since acquired counsel, who, it seems, strategically chose to abandon her

4

original claims and, instead, pursue a theory of § 1983 First Amendment whistleblower liability. It would be needlessly punitive to prevent Moriates, whose *pro se* complaint failed to identify relevant legal violations, from setting forth a viable legal theory rooted in precisely the same set of facts and circumstances. That being the case, moreover, the legal support for defendants' doorstep argument is inapposite. To the point, *Palm Beach Strategic Income, L.P. v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012), *Bravo v. Established Burger One, LLC*, No. 12-CV-9044 (CM), 2013 WL 5549495, at *5 (S.D.N.Y. Oct. 8, 2013), and *Pagan v. New York State Div. of Parole*, No. 98 CIV. 5840 (FM), 2002 WL 398682, at *3 (S.D.N.Y. Mar. 13, 2002)[1] do not involve *pro se* plaintiffs. *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 595, 597 n.5 (S.D.N.Y. 2013) is the only case cited by defendants that involved *pro se* plaintiffs, but in that case, plaintiffs were on their *third* amended complaint, which was over 300 pages and included over 1000 numbered paragraphs. The facts are hardly similar, and each of those cases involved a specific limiting instruction from the court—an instruction that is absent here. At bottom, any repleading violations by plaintiff do not warrant dismissal.

II. The Newly Added Defendants

Defendants next press that the amendments, particularly the claims against the newly added defendants,[2] are time-barred, because the new allegations do not relate back to the original complaint. The statute of limitations period for a § 1983 claim is the same as for a personal

---

[1] Pagan was represented by counsel when granted limited leave to amend, though the attorney eventually withdrew.

[2] Notice is taken that the new defendants have not appeared in the action, and the amended complaint does not appear to have been served upon them. The failure of plaintiff's counsel to serve the amended complaint on the new defendants would ordinarily and independently warrant Rule 12(b)(5) dismissal. Given that the complaint will be ordered dismissed with prejudice on other grounds, there is no need to reach this issue.

injury action, which, as provided in New York C.P.L.R. § 214, is three years. *See Owens v. Okure*, 488 U.S. 235, 250 (1989); *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (applying New York's three-year statute of limitations to § 1983 claim). Moriates's initial complaint was filed on August 28, 2013, while the amended complaint was filed on February 18, 2015. ECF Dkt. Nos. 1, 26. At the very least, Moriates's grievances, to the extent they might be characterized as First Amendment violations, predating August 28, 2010—particularly those from 30 years ago—are, on their face, time-barred.[3]

The remaining claims need not be subjected to a relation-back examination because, even if they did relate back, Moriates fails to plead that any of the newly added defendants were personally involved in any alleged adverse employment actions that violated her constitutional rights. A plaintiff's failure to make any allegations against a defendant she has named is fatal to her claims against that defendant. Fed. R. Civ. P. 8. Moriates has, assuredly, failed to allege facts sufficient to allow the defendants to have a fair understanding of what she is complaining about and to enable them to determine whether there is a possible legal basis for recovery. *See Bell Atlantic Corp.*, 550 U.S. at 555 (Rule 8 imposes the requirement that a plaintiff's pleadings

---

[3] Moriates contends in sur-reply that she is subject to continued retaliation, and that all taken together, the 30 years of discrete actions toll the statute of limitations as continuing violations. Pl. Sur-Reply, p. 2, ECF Dkt. No. 49. This has no plausible basis in fact. Moriates attaches a hefty stack of exhibits (referred to only as "additional evidence"). The first, a partial email thread, shows only that her supervisor needed more information before certifying union release time. The second is a proposed third amended complaint from an entirely different action—a complaint, it is noted, that was never accepted for filing because that plaintiff was denied leave to amend yet again. *See Berlyvasky v. New York City, et al.*, 14-CV-3217 (KAM) (RER), ECF Dkt. No. 100 (reconsideration denied, ECF Dkt. No. 118). The third is discovery disclosures from this action. The fourth is a copy of documents related to a union grievance and request for arbitration. It is puzzling, on any objective basis, why or how these documents should be construed as advancing the tolling argument. In any case, the Court has, certainly, reviewed the documents, which merely confirm the conclusion that the tolling argument is without merit, and that further leave to amend would be futile.

"give the defendant fair notice of what the . . . claim is and the grounds on which it rests" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Ricciuti v. NYC Trans. Auth.*, 941 F. 2d 119, 123 (2d Cir. 1991).

Defendants Emily Lloyd, Steven LaWitts, Carla Lowenheim, Persis Luke, and Michael Gilsenan are not identified in any of the factual allegations beyond stating that they were supervisors at various relevant times. The only references to Luke are his selection for a position that Moriates applied for, and an allegation that he had made (unidentified) false statements regarding a failure to authorize a vehicle. Compl. ¶¶16, 20. Gilsenan is only referenced in that he instructed Moriates she could not stay at work past her shift. *Id.* ¶ 22. LaWitts appears once, as one of "several" supervisors who denied her use of a DEP vehicle. *Id.* ¶ 19. Lowenheim is mentioned as a cross-examiner at the 1986 DEP hearing. *Id.* ¶ 7. Lloyd is not mentioned at al. There is no indication of how any of the new defendants knew of the alleged protected speech or, more critically, were involved, or responsible for, any adverse employment action taken in violation of her First Amendment rights. Having failed to plead a connection between these individuals and the alleged retaliatory conduct, Moriates's claims against them must be dismissed.

Finally, because the Department of Environmental Protection and the City of New York are not "persons" within the meaning of § 1983, all § 1983 claims against those entities are dismissed. *See Reynolds v. Darrah*, No. 11-CV-5885 (JGK), 2011 WL 4582430, at *1 (S.D.N.Y. Sept. 30, 2011) ("Jails, courts, corporations and law firms are not "persons" within the meaning of § 1983.").[4]

---

[4] Additionally, DEP is not an independently suable entity under the New York City Charter. N.Y.C. Charter § 396 (2009), *available at*

### III. First Amendment Claim

Only the claims against Campbell and Strickland, both defendants in the original complaint, now survive. To state a *prima facie* First Amendment retaliation claim, a complaint must plausibly plead that a public employee, like plaintiff, must show that (1) she engaged in constitutionally protected speech by speaking as a citizen on a matter of public concern; (2) she suffered an adverse employment action; and (3) there was sufficient causal connection such that the speech was a motivating factor in the employment decision. *Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2003). Moriates stumbles at the first step of the analysis.[5]

Stepping up her game, Moriates pleads that she engaged in protected activity when she appeared for two OATH hearings[6] on behalf of fellow DEP employees, Berlyavsky and

---

http://www.nyc.gov/html/charter/downloads/pdf/citycharter2009.pdf. In the absence of any plausible argument as to the existence of any relevant City custom or policy, liability against the City cannot be stated. *See Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

[5] Even if Moriates had identified protected speech, she has not adequately pled adverse employment actions or causality. She accuses Strickland of "inappropriately yell[ing] at her" to acquire a license she would need to be eligible for a sought-after position. Compl. ¶ 17. "To qualify as an adverse employment action, the employer's action toward the plaintiff must be materially adverse with respect to the terms and conditions of employment. It must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (internal quotation marks and citations omitted). Yelling amounts, at best, to "those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006). To the extent Moriates pleads that she was denied promotions, and notes that she believed Campbell had some ownership of the personnel process, Compl. ¶ 23, she fails to plead causality. The complaint does not accuse Campbell of being personally involved in denying her any promotion, nor does it indicate that Campbell knew, or had any reason to know, that Moriates had engaged in alleged protected speech, let alone had any reason to discriminate against her for it.

[6] Defendants argue, with supporting exhibits, that Moriates was never subpoenaed and testified at only one OATH hearing, on behalf of Berlavsky. Def. Mem. of Law, pp. 4-6, ECF Dkt. No. 40. The OATH hearings in May of 2010 relating to Berlavsky and Zubkova were, defendants

Zubkova. *Id.* at 14-15. But by her own pleadings, she also acknowledged that she did not engage in protected activity. Moriates explains that the first hearing, on May 18, 2010, was in support of Berlavsky, "who was charged with violating hazardous materials regulations based on perjured testimony of Luke and his colleagues." Compl. ¶ 14. Similarly, the May 26, 2010 hearing was in regards to "bullying by [Zubkova's] supervisor and Deputy Commissioner Angela Licata." *Id.* at 15. Lastly, on August 21, 2012, Moriates says she testified again on behalf of Berlyavsky "at a disciplinary hearing regarding the violation of a policy that DEP employees were not permitted to remain at DEP facilities after work hours." *Id.* at 22.

What plaintiff said at these hearings, why she appeared at all, or why anyone would want to retaliate against her for that speech, is left to the imagination. The totally untethered nature of these snippets of facts is fatal, especially since not all public employee speech is protected by the First Amendment. To be protected, speech must "advance a public purpose," not merely "redress a personal grievance." *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008). There is not the slightest hint in the pleadings of how testimony in a disciplinary hearing "relat[es] to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708 (1983). As the Supreme Court held, "government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* Similarly, "speech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." *Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999). Indeed, even if Moriates spoke out on unlawful discriminatory conduct against

---

claim, actually internal DEP Step II disciplinary grievance hearings. *Id.* Plaintiff concedes that this is the case. *See* Pl. Opp., p. 5, ECF Dkt. No. 42. The disputed distinctions are of no import. Regardless of whether the hearings were Step II or OATH proceedings, the result is the same.

her coworkers, objecting to individualized discrimination is not protected First Amendment speech because it is "not connected to any broader policy or practice and thus, do[es] not raise a public concern of systemic discrimination." *Norton v. Breslin*, 565 F. App'x 31, 34 (2d Cir. 2014).

Plaintiff's reliance on *Lane v. Franks*, 573 U.S. ---, 134 S. Ct. 2369, 2378, 189 L. Ed. 2d 312 (2014) is woefully misplaced. The plaintiff in Lane provided sworn testimony in open court, compelled by subpoena, at a criminal proceeding against a corrupt government official. Nothing of the sort is, or, the record suggests, could be, pled here. All that can be gleaned from these bare allegations is that Moriates appeared on behalf of coworkers at disciplinary hearings relating to workplace policy violations. Given the complete failure to identify what Moriates said at these hearings or why, it is impossible to know if she spoke on a matter of public concern. Plaintiff's characterization of these hearings, and that they were internal disciplinary actions, make it deeply improbable that these episodes involved matters of public concern. The short of it is that plaintiff's conclusory allegations about matters which are not of "public concern" do not plausibly plead a § 1983 First Amendment retaliation claim.[7]

IV. Amendment Would Be Futile

Reaching for the blunderbuss, Moriates attempts to cure some of these deficiencies in her opposition, by explaining that the OATH hearings were, as noted by defendants, internal Step II disciplinary proceedings, and that she appeared at these proceedings on behalf of her coworkers as a union representative.[8] Pl. Opp., p. 5. She contends further that, because Berlyavsky's

---

[7] Truly, if all of the claims interposed in the amended complaint had survived other defects, they all would have failed here.

[8] The new facts and details still fail to articulate how being a union representative converts her

10

disciplinary action related to hazardous materials, her testimony related to public safety and was of public concern. This argument is meritless. The subject of the hearing was that Berlyavsky had *endangered* public safety by violating regulations, and Moriates spoke in support of *him*, not the public. The documents attached to plaintiff's sur-reply are similarly unavailing.

Lamely, plaintiff seeks a third bite out of the apple. Leave to amend to add the sur-reply allegations would not, however, cure the complaint's deficiencies. To extent it appears plaintiff moves to amend again, that motion is denied.

## Conclusion

For the foregoing reasons, Moriates has failed to state a § 1983 claim for First Amendment retaliation upon which relief could be granted. The amended complaint is dismissed in its entirety, with prejudice.

The Clerk of Court is directed to enter judgment accordingly and so close this case.

So Ordered.

Dated: Brooklyn, New York
June 15, 2016

/s/ USDJ ERIC N. VITALIANO

ERIC N. VITALIANO
United States District Judge

---

speech, whatever it may have been, into that of public import. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (denying leave to amend where it would be futile) (quoting *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006)).

11